David MOODY, Petitioner,

v.

Max UNGERER, Respondent.

No. 93SC236.

Supreme Court of Colorado,
En Banc.

June 13, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Arnold, Deputy Atty. Gen., Jane R. Christ-

man, First Asst. Atty. Gen., Simon P. Lipstein, Asst. Atty. Gen., Denver, for petitioner.

James Schum, Hotchkiss, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *Ungerer v. Moody*, 859 P.2d 251 (Colo.App.1993). The court of appeals reversed the district court's dismissal of the respondent's claims for false arrest and for the violation of his civil rights. We reverse and remand to the court of appeals with directions to reinstate the district court's order of dismissal.

## I

The respondent, Max Ungerer, a county employee, was returning to the county shop driving a road grader when a Colorado State Trooper, David Moody, stopped him for impeding traffic. Trooper Moody asked Ungerer to produce his driver's license but did not issue him a traffic citation. Instead, he retained Ungerer's driver's license and instructed him to proceed to the county shop. Trooper Moody followed the road grader, contacted Ungerer's supervisor at the county shop, and complained about the delay caused by the road grader impeding rush-hour traffic. After talking to the supervisor, Trooper Moody returned Ungerer's driver's license and did not charge Ungerer with a violation of the motor vehicle laws.

Ungerer filed a complaint in the District Court of Delta County alleging that Trooper Moody violated his constitutional right to be free from an unreasonable seizure as well as his right to due process of law and claimed he was entitled to damages under 42 U.S.C. § 1983 (1988). A second claim for relief

alleged false arrest. In response to the complaint, Trooper Moody filed a motion to dismiss pursuant to C.R.C.P. 12(b)(1) asserting that Ungerer's complaint failed to state a claim for false arrest, or a claim under 42 U.S.C. § 1983. Trooper Moody also maintained that if he had violated Ungerer's constitutional rights, he had immunity from liability under section 1983. Additionally, he asserted as an affirmative defense that the false arrest claim was barred by the Colorado Governmental Immunity Act. The district court granted Trooper Moody's motion and dismissed Ungerer's complaint. Ungerer appealed and the court of appeals reversed the dismissal holding that Ungerer's complaint stated a claim for relief and that Trooper Moody did not have immunity from liability under either section 1983 or the Colorado Governmental Immunity Act.

## II

Ungerer maintains that he has stated a claim for relief under 42 U.S.C. § 1983 (1988). We disagree.

## A

The Civil Rights Act was not intended to create a body of general tort law. *See Paul v. Davis,* 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *see also Lessman v. McCormick,* 591 F.2d 605, 609 (10th Cir.1979) (recognizing that not all deprivations of liberty are actionable under section 1983).[1] In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a right, privilege, or immunity secured by the federal constitution or federal laws by a person acting under color of state law.[2] *State v.*

---

1. The Tenth Circuit has noted that although the Civil Rights Act does not create a body of tort law, the rights and duties under § 1983 are not analogous to common law actions that arise under state substantive law; the court explained that a trivial, insubstantial, or frivolous claim is not cognizable under § 1983. *See Wells v. Ward,* 470 F.2d 1185, 1187 (10th Cir.1972) (holding that under state common law the slightest interference with personal liberty is a false imprisonment but that it does not follow that the same interference activates remedies under § 1983).

2. Although some of the federal circuit courts have indicated that a plaintiff has the burden of pleading that the violated right was clearly established, *Sawyer v. County of Creek,* 908 F.2d 663, 665–66 (10th Cir.1990), *Gutierrez v. Municipal Court,* 838 F.2d 1031, 1052 (9th Cir.1988), *Gagne v. City of Galveston,* 805 F.2d 558, 559 (5th Cir.1986), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985); the United States Supreme Court recently rejected a heightened pleading requirement in a local government failure-to-train case. *Leatherman v. Tarrant*

*Defoor*, 824 P.2d 783 (Colo.), *cert. denied*, —— U.S. ——, 113 S.Ct. 483, 121 L.Ed.2d 387 (1992). In the context of an allegedly illegal seizure, the plaintiff must not only prove that there was a seizure but that the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989); *see also Pleasant v. Zamieski*, 895 F.2d 272, 277 (6th Cir.) ("The inquiry as to whether or not some action constitutes a 'seizure' under the fourth amendment is distinct from the inquiry as to whether an action already found to constitute a fourth amendment seizure is also 'unreasonable' under the fourth amendment."), *cert. denied*, 498 U.S. 851, 111 S.Ct. 144, 112 L.Ed.2d 110 (1990).

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When a police officer who is acting under color of state law is charged with a violation of a plaintiff's federal rights, the officer can assert qualified immunity. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *see also Hafer v. Melo*, 502 U.S. 21, ——, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991). The purpose of qualified immunity is to shield a government employee from the burdens associated with trial which include distraction from governmental responsibilities, inhibiting discretion-

ary decision making, and the disruptive effects of discovery. *Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir.1990). "[Qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

■ In evaluating a police officer's claim of qualified immunity, a reviewing court must determine whether the right allegedly violated was "clearly established," i.e., whether the contours of the right were sufficiently clear so that a reasonable officer would understand that the right was violated. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Hannula*, 907 F.2d at 130. Determining whether a right is clearly established requires a specific inquiry, not a general inquiry based on abstract rights. *Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039; *see also Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir.1989) (holding that for a plaintiff to overcome a police officer's qualified immunity, the plaintiff must prove that "no police officer could have misunderstood that [the officer's] particular actions which caused [the plaintiff's] injuries violated federal law"); *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987) ("We must be wary both of using hindsight to make an untidy body of case law seem clear and directive at the time the public official was called on to act, and of

County, —— U.S. ——, ——, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). In *Leatherman*, the Supreme Court specifically disapproved of judge-made standards which would not "square ... with the liberal system of 'notice pleading' set up by the Federal Rules." *Id.* at ——, 113 S.Ct. at 1163. Speaking for a unanimous court, Chief Justice Rehnquist stated that if a heightened pleading requirement is to be enforced, the change "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Id.*

In addition, in *Elder v. Holloway*, 975 F.2d 1388 (9th Cir.1992), *superseding*, 951 F.2d 1112 (9th Cir.1991), the Ninth Circuit held that "in opposing an official's request for judgment based on qualified immunity, the plaintiff's burden includes identifying the universe of relevant statutory or decisional law from which the court can

determine whether the right allegedly violated was clearly established." *Id.* at 1393. On review of *Elder*, the Supreme Court rejected the Ninth Circuit's heightened pleading requirement and held that the question of what is "clearly established law" is a question of law and "[a] court engaging in review of a qualified immunity judgment should therefore use 'its full knowledge of its own [and other relevant] precedents.' " *Elder v. Holloway*, —— U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n. 9, 104 S.Ct. 3012, 3018 n. 9, 82 L.Ed.2d 139 (1984)).

Because we hold, as a matter of law, that the right violated in this instance was not clearly established when the alleged violation of Ungerer's rights occurred, it is not necessary for us to determine whether Ungerer bears the burden of pleading this issue with particularity.

imagining that public officials have the training and experience in extracting legal rules from case law that appellate judges have."); *see generally* 2 Sheldon H. Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983* § 8.07 (3d ed. 1991) (analyzing what is "clearly settled law" and concluding: "For a defendant to be held liable, then, relatively little legal ambiguity can be tolerated").

Accordingly, if no clearly established law existed at the time Trooper Moody stopped Ungerer that would lead a reasonable police officer to conclude that Trooper Moody violated Ungerer's federal rights, Trooper Moody has immunity from liability and Ungerer's claim pursuant to 42 U.S.C. § 1983 should be dismissed. *Hannula*, 907 F.2d at 131.

### B

■ The court of appeals concluded that at the time Moody stopped Ungerer, the law was clearly established that retaining Ungerer's license for a brief period, instead of issuing a traffic citation and allowing Ungerer to proceed, is a constitutional violation. We disagree. There is no clearly established legal precedent that would have led a reasonable officer to know whether he was violating Ungerer's constitutional rights by retaining Ungerer's driver's license for a brief period while following him to his intended destination. Accordingly, we hold that Trooper Moody is entitled to qualified immunity.

Section 42–4–1003, 17 C.R.S. (1984), grants a police officer authority to issue a traffic citation to the driver of a vehicle who is impeding traffic. However, that authority does not cause all other actions by an officer to be a constitutional violation. The court of appeals incorrectly assumed that the constitution requires that once a police officer stops an individual, the officer must either issue a traffic citation and allow the individual to proceed on his way, or not take any action.

Upon review of the relevant law, we have not found any case or statute which establishes that when an officer retains an individual's driver's license and follows the driver while he proceeds to his intended destination, the driver's constitutional rights have been violated.[3] Although some cases have held that retention of a driver's license is *a factor* in analyzing whether a seizure has occurred, *see United States v. Jordan*, 951 F.2d 1278, 1282 (D.C.Cir.1991); *United States v. Jefferson*, 906 F.2d 346, 349–50 (8th Cir.1990); *United States v. Battista*, 876 F.2d 201, 205 (D.C.Cir.1989); *United States v. Cordell*, 723 F.2d 1283, 1285 (7th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984); *United States v. Waksal*, 709 F.2d 653, 659 (11th Cir.1983), no court has held that when an officer retains a license the seizure is per se unreasonable and the traffic

---

**3.** The case law cited by Ungerer in his response to Trooper Moody's motion to dismiss does not establish a clearly existing constitutional standard under analogous facts. In each of the cited cases, except two, the plaintiff was arrested and taken to jail. Similarly, the two non-arrest cases cited by Ungerer are not applicable in this case. *Flick v. LaRue*, 608 F.Supp. 1281, 1282 (E.D.Mich.1985) involved a plaintiff who was a prisoner and was placed in administrative detention by prison officials. *Goodboe v. Gabriella*, 663 P.2d 1051 (Colo.App.1983) involved a plaintiff who brought suit against a police officer for false imprisonment because the officer was present when an ambulance arrived to take the plaintiff to Bethesda Hospital for commitment. These cases do not even remotely correspond to a brief retention of property that does not force an individual to deviate from his intended route.

The court of appeals cited *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988), in support of its holding that once a driver has produced valid identification, an officer *must* allow the driver to proceed on his way. *See Ungerer v. Moody*, 859 P.2d 251, 257 (Colo.App.1993). In *Guzman*, a police officer stopped the driver of a vehicle for not wearing his seat belt. After stopping the vehicle and verifying that the driver was entitled to operate the vehicle, the officer engaged in "intrusive questioning" in an attempt to discover evidence of a crime. The court engaged in an analysis of whether the pretextual stop was unreasonable within the meaning of the fourth amendment and held that the retention of the driver's identification was not reasonably related to the scope of the circumstances that justified the initial stop. Ungerer does not contend that Trooper Moody engaged in a pretextual stop or that the traffic stop was unreasonable because Trooper Moody interrogated him. Therefore, while *Guzman* is arguably relevant, it would not lead a reasonable officer to conclude that under the facts in this case Trooper Moody violated a clearly established right.

stop becomes a violation of the driver's constitutional rights.[4]

At the time Trooper Moody stopped Ungerer, the following principles were clearly established. A traffic stop is a limited seizure within the meaning of the Fourth Amendment. *See Berkemer v. McCarty,* 468 U.S. 420, 436–37, 104 S.Ct. 3138, 3148–49, 82 L.Ed.2d 317 (1984). The reasonableness of a traffic stop turns on the facts and circumstances of each case, and in particular on "(i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and experience." *United States v. Mendenhall,* 446 U.S. 544, 561, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980).

Ungerer does not dispute that he was impeding traffic and that Trooper Moody acted properly in stopping him and requesting that he produce his driver's license. Ungerer committed an ongoing traffic infraction. Issuing a traffic citation would not resolve the fact that once the road grader continued on its course to the shop, it might once again create a hazardous traffic impediment. Trooper Moody made a discretionary decision to follow Ungerer to the county shop and to decide whether to issue a traffic citation after the road grader reached the county shop. A reasonable officer could conclude based on the clearly established law that existed when Trooper Moody stopped Ungerer that in the interest of safety, a traffic citation should not be issued and Ungerer should be directed not to further impede traffic.

Review of the relevant law indicates that facts which could establish that a driver is not free to leave because an officer has decided to have the driver move his vehicle to another location do not establish that a constitutional traffic stop has turned into an unconstitutional seizure or arrest. Although Ungerer might be able to establish that Trooper Moody made a bad judgment, no clearly established law provides that Trooper Moody violated Ungerer's federal rights.[5] Because a reasonable officer could have believed that Trooper Moody's conduct comported with the Fourth Amendment to the United States Constitution, we hold that he has immunity from liability under 42 U.S.C. § 1983.

### III

■ Ungerer also asserts that Trooper Moody falsely arrested him and that Trooper Moody is not immune from liability under the Colorado Governmental Immunity Act because his actions were willful and wanton. We disagree.

A public employee is immune from all claims that lie or could lie in tort, unless the claim falls within one of the six limited areas for which immunity has been waived or unless the act or omission causing the injury was willful and wanton. *See* § 24–10–118(2), 10A C.R.S. (1988). The court of appeals held that Ungerer's complaint set forth willful and

---

**4.** In *Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991), a police officer effectuated a traffic stop. A woman passenger in the car was detained, required to lie on the ground while an officer pointed a shotgun at her, and, after arrest of her companions, was abandoned alone at the side of a highway late at night without transportation home. It was undisputed that the woman was seized. *Id.* at 1488. However, the court held that although the law enforcement officer engaged in disappointing conduct and showed bad judgment, the woman did not have a section 1983 claim because the seizure that resulted from the traffic stop was not unreasonable. *Id.* at 1490–93. *Courson* was decided after Trooper Moody stopped Ungerer and therefore is not evidence of clearly established law that existed when the alleged violation occurred. However, *Courson* is strong evidence that even if Trooper Moody had seized Ungerer, the seizure was a de minimis violation of Ungerer's rights that is not actionable. *See Ward,* 470 F.2d at 1187 (holding that a trivial, insubstantial, or frivolous claim is not actionable under § 1983).

**5.** The court of appeals noted that the State Patrol's policy is to return a violator's driver's license at the conclusion of the initial stop. This evidence may be probative as to whether Trooper Moody made a bad judgment; it is a policy manual, however, not clearly established law that determines whether a constitutional right was violated. *See Gagne v. Galveston,* 805 F.2d 558, 559 (5th Cir.1986) (holding that the violation of an unambiguous police department regulation does not deprive a police officer of qualified immunity). ·

wanton conduct sufficient to overcome Trooper Moody's motion to dismiss. We disagree.

The phrase willful and wanton is not defined by the Colorado Governmental Immunity Act. Section 13–21–102(1)(b), 6A C.R.S. (1987), defines "willful and wanton" for purposes of determining exemplary damages:

> As used in this section, "willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff.

In *Pettingell v. Moede*, 129 Colo. 484, 491, 271 P.2d 1038, 1042 (1954), we defined "willful and wanton" as used in the automobile guest statute, as "wholly disregardful of the rights, feelings and safety of others ... at times even imply[ing] an element of evil." *See also Blacks Law Dictionary* 1434–35 (5th ed. 1979) ("In order to constitute 'willful and wanton' misconduct, act or omission must be not only negligent, but exhibit conscious disregard for safety of others.").

Although these definitions are not specifically applicable in the context of what constitutes willful and wanton conduct sufficient to abrogate governmental immunity, they persuade us that Trooper Moody's actions do not approach the level of culpable conduct required to abrogate that immunity. *See Duong v. County of Arapahoe*, 837 P.2d 226 (Colo.App.1992) (holding that defendants were entitled to immunity because the plaintiffs presented no evidence that the defendants' refusal to install security measures which could have prevented a man from killing his wife in the courthouse was willful and wanton); *Whitcomb v. City & County of Denver*, 731 P.2d 749 (Colo.App.1986) (ruling that police officers' refusal to transport a stranded motorist to her destination, which could have prevented a subsequent assault on the woman, was not willful and wanton).

Trooper Moody's decision to end a traffic stop of a vehicle that was impeding traffic by following the vehicle to its destination instead of issuing the driver a traffic citation is not willful and wanton conduct. Trooper Moody's decision did not create a dangerous situation; if anything, it alleviated a hazard to Ungerer as well as other drivers. The decision was not needless or reckless but was simply a choice between logical alternatives that a reasonable officer would entertain.

Because Trooper Moody's actions were not willful and wanton as a matter of law, the court of appeals erred in reversing the trial court's order dismissing Ungerer's claim for false arrest.

## IV

Trooper Moody is immune from liability under 42 U.S.C. § 1983 and the Colorado Governmental Immunity Act. Accordingly, we reverse and remand to the court of appeals with directions to reinstate the order of dismissal entered by the district court.