Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 12, 2016

**2016 CO 58**

**No. 14SC346, <u>Martinez v. Estate of Bleck</u>—Colorado Governmental Immunity Act—Interlocutory Appeal—Sovereign Immunity—Willful and Wanton Conduct**

Steven Wayne Bleck was injured when Officer Jeffrey Martinez's firearm discharged during an attempt to subdue Bleck. Bleck filed a state law battery claim against Martinez, and Martinez filed a motion to dismiss, claiming immunity under the Colorado Governmental Immunity Act ("CGIA"). The trial court found that Bleck had adequately pled willful and wanton conduct by Martinez and thus denied Martinez's motion. Martinez then filed an interlocutory appeal with the court of appeals. That court held that it lacked jurisdiction to hear the appeal, because Martinez was only entitled to qualified immunity, which is not appealable on an interlocutory basis, not sovereign immunity, which is. The supreme court reverses, and concludes that whether a public employee's conduct is willful and wanton under the CGIA implicates sovereign immunity. Thus, the plain language of the CGIA affords Martinez a right to an interlocutory appeal. The supreme court further holds that the trial court erred in (1) not deciding the issue of whether Martinez's conduct was willful and wanton, and (2) using a negligence standard to define willful and wanton. Accordingly, the supreme court remands for further proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 58

### Supreme Court Case No. 14SC346
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA2637

### Petitioner:

Jeffrey A. Martinez,

v.

### Respondent:

The Estate of Steven Wayne Bleck, by Joanna Churchill, Personal Representative for Steven Bleck, deceased.

### Judgment Reversed
*en banc*
September 12, 2016

**Attorneys for Petitioner:**
Vaughan & DeMuro
Gordon L. Vaughan
David R. DeMuro
 *Colorado Springs, Colorado*

**Attorneys for Respondent:**
Bachus & Schanker, LLC
J. Kyle Bachus
Maaren L. Johnson
 *Denver, Colorado*

**Attorneys for Amicus Curiae The Colorado Municipal League:**
The Law Office of Steven J. Dawes, LLC
Steven J. Dawes
 *Denver, Colorado*

**JUSTICE EID** delivered the Opinion of the Court.

¶1 Upon obtaining information that Steven Wayne Bleck was suicidal and possibly armed, officers with the Alamosa Police Department, including petitioner Jeffrey A. Martinez, entered Bleck's hotel room. After Bleck did not respond to the officers' command to show his hands and lie down on the floor, Martinez approached him, and, without holstering his weapon, attempted to subdue him. In the process, the firearm discharged, injuring Bleck. As relevant here, Bleck brought suit against Martinez in federal court, alleging excessive force and a state law battery claim. The federal court granted summary judgment and dismissed Bleck's federal claim, concluding that there was no evidence that the shooting was intentional. After the federal district court declined to assert supplemental jurisdiction over the state law battery claim, Bleck refiled the claim in state district court in the proceeding before us.

¶2 Martinez filed a motion to dismiss pursuant to C.R.C.P. 12(b)(1) and 12(b)(5), claiming that his actions were not "willful and wanton" and that therefore he was entitled to immunity under section 24-10-118(2)(a) of the Colorado Governmental Immunity Act ("CGIA"). §§ 24-10-101 to -120, C.R.S. (2016). The trial court denied the motion, reasoning that Bleck had adequately pled willful and wanton conduct on Martinez's part by alleging that he engaged in conduct he "should have" known to be dangerous in attempting to subdue Bleck without first holstering his firearm.

¶3 Martinez then filed an interlocutory appeal with the court of appeals. The court concluded that it lacked jurisdiction to hear the appeal on the ground that Martinez was only entitled to claim qualified immunity, which is not appealable on an interlocutory basis, not sovereign immunity, which is. Estate of Bleck v. Martinez, 2014 COA 38,

2

¶¶ 2–3, __ P.3d __ ("Estate of Bleck II").  Because it found it had no jurisdiction to hear the interlocutory appeal, it did not consider the merits of Martinez's claim that the trial court applied the wrong standard for willful and wanton conduct in denying its motion to dismiss.

¶4      We granted certiorari and now reverse.  We first hold that, by its plain terms, section 24-10-118(2.5), C.R.S. (2016), affords Martinez a right to file an interlocutory appeal challenging the trial court's determination that he was not entitled to immunity.  That section provides that when "a public employee raises the issue of sovereign immunity" and immunity is denied, the employee may bring an interlocutory appeal of the denial.  The only "sovereign immunity" that can be "raised" by an employee is the immunity described in section 24-10-118(2)(a), which provides that a public employee "shall be immune from liability" for actions that arise in tort or could arise in tort unless such actions were "willful and wanton."   § 24-10-118(2)(a).   That is precisely the immunity claim Martinez brought here.  Indeed, the CGIA only refers to sovereign immunity; the phrase "qualified immunity" does not appear in the statute.  Therefore, when Martinez claimed that he was entitled to immunity from suit because his actions were not willful and wanton under section 24-10-118(2)(a), he was claiming sovereign immunity, and was entitled to an interlocutory appeal of the denial of immunity under section 24-10-118(2.5).

¶5      We further hold that the trial court erred in simply determining that Bleck had adequately pled that Martinez's conduct was willful and wanton; instead, the trial court should have determined all issues relating to Martinez's immunity claim, including

3

factual issues, regardless of whether those issues are jurisdictional in nature. See Trinity Broad. of Denver v. City of Westminster, 848 P.2d 916, 924–25 (Colo. 1993); Finnie v. Jefferson Cty. Sch. Dist. R-1, 79 P.3d 1253, 1259 (Colo. 2003). Because the trial court did not determine whether Martinez's conduct was willful and wanton, we remand this case for such a determination and a Trinity hearing, if the court deems it necessary.

¶6 Finally, we hold that, in concluding that Bleck adequately pled willful and wanton conduct, the trial court erred in applying a negligence standard that Martinez "should have" known his conduct was dangerous. On remand, the trial court should determine whether Martinez's conduct in discharging his weapon was willful and wanton, meaning conduct that is "not only negligent, but exhibit[s] conscious disregard for safety of others." Moody v. Ungerer, 885 P.2d 200, 205 (Colo. 1994) (citing Black's Law Dictionary 1434–35 (5th ed. 1979)) (emphasis added). We therefore reverse and remand the case for further proceedings consistent with this opinion.

## I.

¶7 We take the following facts from the complaint. On August 6, 2010, a mental health counselor called 911 and reported that Bleck was intoxicated, suicidal, and possibly armed at a local hotel in Alamosa. The Alamosa Police Department dispatched several officers, including Martinez, to the hotel to perform a welfare check. After the officers confirmed that Bleck had checked into the hotel and had been drinking, they received additional calls from the counselor reporting that Bleck had cut off all communications and was threatening to "blow his head off." The officers proceeded to

4

Bleck's room with a key card obtained from the hotel clerk. Martinez entered the room without knocking, holding his duty weapon in his right hand, and the other officers followed.

¶8 When they entered the room, Bleck was sitting on the bed facing away from them. Unable to see his hands or whether he had a weapon, the officers commanded Bleck to show his hands and lie down on the floor, but he did not respond. Martinez then decided to physically take control of Bleck using a technique the parties refer to as "going hands on." Without holstering his weapon, Martinez approached Bleck, made contact with him, and, while attempting to subdue him, discharged the firearm, striking Bleck in the hip and causing injury.

¶9 Bleck filed suit against Martinez and the City of Alamosa in federal district court, claiming that Martinez used excessive force in violation of the Fourth Amendment and that the city inadequately trained and supervised Martinez in the use of force while dealing with persons with mental health issues.[1] He also filed a state law battery claim against Martinez in the federal court action. On a motion for summary judgment, the federal district court dismissed the federal claim against Martinez. <u>Bleck v. City of Alamosa</u>, 839 F. Supp. 2d 1149, 1152 (D. Colo. 2012). It concluded that no Fourth Amendment seizure occurred because, as Bleck's own expert admitted, there was "no evidence suggesting that the shooting was attributable to anything other than an accidental discharge." <u>Id.</u> at 1154. The court also dismissed the claim against the city

---

[1] Bleck passed away during the pendency of his appeal, and the Estate was substituted as plaintiff-respondent. This opinion refers to the respondent as Bleck.

and declined to exercise supplemental jurisdiction over the state law claim. Id. at 1155. The Tenth Circuit affirmed the dismissal of the Fourth Amendment claim against Martinez, albeit on different grounds, but remanded the claim against Alamosa, which is not before us. Estate of Bleck v. City of Alamosa, 540 F. App'x 866, 873–74, 877 (10th Cir. 2013) ("Estate of Bleck I"). It accepted the district court's finding that Martinez did not intend to shoot Bleck. See id. at 875.

¶10 Bleck refiled his battery claim against Martinez in state district court, the proceeding at issue in this appeal. Martinez filed a motion to dismiss pursuant to C.R.C.P. 12(b)(1) and 12(b)(5), claiming immunity under section 24-10-118(2)(a) of the CGIA. The district court denied the motion. It reasoned that, where a plaintiff properly alleges that a public employee acted willfully and wantonly, the employee is only entitled to qualified immunity, not sovereign immunity. The court quoted Gallagher v. Board of Trustees for University of Northern Colorado, 54 P.3d 386, 394 (Colo. 2002), for the proposition that, "because qualified immunity is not a bar to suit, the trial court may not decide the issue [of whether the employee's conduct was willful and wanton] on a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." Allegations of willful and wanton conduct, the court continued, are to be determined at trial as long as they are sufficiently pled by the plaintiff.

¶11 The court then found that the complaint adequately pled willful and wanton conduct. In support of this conclusion, the trial court emphasized that Martinez was alleged to have intentionally placed his hands on Bleck while holding his loaded firearm in violation of police department policy, and that he "should have realized this

6

conduct was dangerous." By proceeding with the "hands on maneuver" anyway, the court continued, Martinez allegedly disregarded Bleck's safety and Bleck suffered harm as a result. The trial court held that these allegations sufficiently pled willful and wanton conduct.

¶12 Martinez filed an interlocutory appeal under section 24-10-118(2.5). The court of appeals, however, held that it lacked jurisdiction to hear the appeal. Estate of Bleck II, ¶¶ 2–3. It first noted that section 24-10-118(2.5) only authorizes interlocutory appeal where the district court denies a motion asserting "sovereign immunity." Id. at ¶ 8. Citing City of Lakewood v. Brace, 919 P.2d 231, 245–46 (Colo. 1996), the court of appeals agreed with the trial court that, where a complaint adequately alleges willful and wanton conduct by a public employee, the defendant is not entitled to sovereign immunity but only to qualified immunity. Estate of Bleck II, ¶ 9. Viewing qualified immunity as a trial defense rather than a jurisdictional bar, the court concluded that "a trial court's determination of a C.R.C.P. 12(b) motion challenging whether an employee's conduct was willful and wanton is not subject to interlocutory appeal." Id. (citing Brace, 919 P.2d at 245; Gallagher, 54 P.3d at 394–95). Correspondingly, it held that the trial court's decision here was not subject to interlocutory review and thus declined to review Martinez's argument that the trial court applied the wrong standard of willful and wanton conduct. Id. at ¶¶ 11, 19–20.

¶13 We granted certiorari and now reverse.[2]

---

[2] We granted certiorari to review the following issues:

7

## II.

¶14 Martinez argues that (1) the court of appeals erred in holding that the CGIA does not authorize an interlocutory appeal challenging a trial court's denial of a public employee's claim of immunity, and (2) the trial court applied the wrong definition of "willful and wanton conduct." We agree with Martinez on both counts.

## A.

¶15 The CGIA provides that public employees "shall be immune from liability" for "all claims for injury which lie in tort or could lie in tort" that "arise[] out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton." § 24-10-118(2)(a), C.R.S. (2016). In addition, section 24-10-118(2.5) of the CGIA permits public employees to "raise[] the issue of sovereign immunity prior to or after the commencement of discovery," in which case the trial court "shall suspend discovery . . . except [that which is] necessary to decide the issue of sovereign immunity," and "shall decide such issue on motion." § 24-10-118(2.5), C.R.S. (2016).

---

1. Whether, where there are no disputed issues of material fact, a trial court's denial of immunity on the basis of a claim of "willful and wanton conduct" is subject to interlocutory appeal.

2. Whether, if the issue of denial of immunity is subject to interlocutory appeal, the district court improperly applied the Colorado Governmental Immunity Act's "willful and wanton" conduct exception to immunity for public employees, C.R.S. § 24-10-118(2)(a), to deny defendant's motion to dismiss plaintiff's tort claim of battery arising out of defendant's accidental discharge of his firearm.

Section 24-10-118(2.5) further provides that the court's decision regarding such a motion is deemed a final judgment and "shall be subject to interlocutory appeal."[3]

¶16    At issue in this case is whether the trial court's denial of Martinez's motion to dismiss claiming immunity under the CGIA is subject to interlocutory appeal under section 24-10-118(2.5).  We hold that it is.

¶17    Martinez's motion claimed immunity under section 24-10-118(2)(a) on the ground that, at the time of the injury, he was performing his duties and acting within the scope of his employment, and he did not act in a willful and wanton manner.  He thus "raise[d] the issue of sovereign immunity" under section 24-10-118(2.5).  When his motion was denied, it was deemed final and subject to interlocutory appeal under that same section.

¶18    Echoing the trial court and court of appeals, however, Bleck argues that the denial of Martinez's motion is not subject to interlocutory appeal because he could not raise the issue of "sovereign immunity," which is subject to interlocutory appeal under section 24-10-118(2.5), but only qualified immunity.  We disagree with this argument based on the plain language of the statute.

---

[3] The complete text of section 24-10-118(2.5) provides:

> If a public employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery; except that any discovery necessary to decide the issue of sovereign immunity shall be allowed to proceed, and the court shall decide such issue on motion.  The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.

9

¶19    The CGIA only ever refers to the immunity it confers as "sovereign immunity." See, e.g., § 24-10-106(1), C.R.S. (2016) (referring to the waiver of a public entity's "sovereign immunity"); § 24-10-108 (stating that "sovereign immunity" is a bar to suit against a public entity for actions that lie in tort or could lie in tort). It is true that section 24-10-118(2)(a) states that a "public employee shall be immune from liability," without further explanation of the type of immunity the public employee shall receive. However, section 24-10-118(2.5) addresses what happens when "a public employee raises the issue of sovereign immunity," and explains that when the employee does so, the trial court must address the "issue of sovereign immunity" and its decision is "subject to interlocutory appeal." The phrase "qualified immunity" is never used in section 24-10-118(2)(a) or section 24-10-118(2.5); indeed, the phrase never appears in the CGIA. Thus, the immunity to which section 24-10-118(2)(a) refers is the same "sovereign immunity" at issue in section 24-10-118(2.5). In other words, "sovereign immunity" is the only immunity that a public employee can "raise[]."

¶20    Again echoing the trial court and the court of appeals, Bleck argues that this result is foreclosed by City of Lakewood v. Brace, 919 P.2d 231 (Colo. 1996). In Brace, the plaintiff, a Lakewood city employee, brought several claims against the city, the city manager, and the assistant city manager in connection with the termination of his employment, including two state law tort claims against the individual employees. Id. at 235. The public employee defendants filed a motion for summary judgment, arguing that the CGIA barred the tort claims. Id. at 236. The district court denied the motion on

those claims after finding that genuine issues of material fact existed over whether the employees' conduct was "willful and wanton" under section 24-10-118(2)(a). Id.

¶21 This court affirmed the denial of the summary judgment motion and held that the order was not immediately appealable. Id. at 245–46. To reach this holding, we recognized two categories of immunity: "sovereign immunity," to which public entities are entitled under section 24-10-108 and section 24-10-118(2.5); and what we termed "qualified immunity" as embodied in section 24-10-118(2)(a). Id. at 245. We reasoned that because section 24-10-118(2)(a) employs the term "immunity," rather than the phrase "sovereign immunity," it must refer to qualified immunity. Id. Qualified immunity, we stated, "is not immunity from suit, but rather a defense that can be raised by the public employee who is named in his or her individual capacity." Id. "Sovereign immunity," by contrast, "shall be a bar to any action." Id. (quoting § 24-10-108). Based on this distinction, we determined that "the legislature did not intend an individual defendant's immunity from tort suits, although derived from sovereign immunity, to have the same initially preclusive effect from suit." Id. at 246. We reasoned that the "willful and wanton" standard of section 24-10-118(2)(a) bolstered this conclusion because it "mandate[d] a fact-based determination . . . not susceptible to resolution at an early stage in the litigation process before significant discovery has been undertaken unless there are no disputed issues of fact." Id.

¶22 We substantially limited our decision in Brace, however, in Gallagher v. Board of Trustees for University of Northern Colorado, 54 P.3d 386, 394 (Colo. 2002). In that case, as relevant here, the plaintiff sued an administrator at the University of Northern

11

Colorado, where the plaintiff had previously worked, for defamation, alleging that the administrator made a defamatory comment at a staff meeting. Id. at 388. The trial court granted the administrator's 12(b)(1) motion to dismiss after finding that he made the comment within the scope of his employment under section 24-10-118(2)(a).[4] Id. at 390. The court of appeals affirmed. Id.

¶23    The plaintiff argued before us that the trial court improperly resolved a factual issue—whether the administrator made the comments within the scope of his employment—akin to the factual issue regarding willful and wanton at issue in Brace. Id. at 393–94. He asserted that both issues implicated a public employee's qualified immunity, not sovereign immunity. Id. at 394. We rejected the plaintiff's argument and concluded that the "scope of employment" issue implicated sovereign immunity, not qualified immunity. Id. at 395.

¶24    To distinguish Brace, we noted that, after the operative facts of that case but before our resolution of it, the General Assembly added section 24-10-118(2.5), expressly providing for interlocutory appeal of a district court's decision regarding a public employee's defense of sovereign immunity. 54 P.3d at 394. We explained that section 24-10-118(2.5)'s "directive to treat the determination of a public employee's sovereign immunity as a pre-trial matter" would permit "the court to decide early whether the case is a dispute between private parties or one which involves the government." Id. at 395. Because the issue of whether an employee acted within the scope of employment

---

[4] The plaintiff did not allege that the comment was willful and wanton, so the only issue was whether it occurred outside the scope of the administrator's employment. Gallagher, 54 P.3d at 395.

was "a basic prerequisite for immunity" going to the core of whether the dispute involved the government, we deemed it an issue "of sovereign, not qualified, immunity" subject to interlocutory appeal. Id. The willful and wanton determination at issue in Brace, we concluded, involved a less "basic" of a "prerequisite for immunity." Id.

¶25 Importantly, Gallagher makes clear that although we cited section 24-10-118(2.5) in Brace as addressing "sovereign immunity," see Brace, 919 P.2d at 245, we had no opportunity to actually apply the provision in Brace because it was not the law when the operative facts occurred. Gallagher, 54 P.3d at 395. Therefore, contrary to Bleck's argument, Brace could not have adopted a definitive construction of section 24-10-118(2.5) that would be applicable here. On the contrary, we conclude that the adoption of section 24-10-118(2.5) renders Brace's distinction between qualified and sovereign immunity an untenable one, at least for purposes of the CGIA.[5]  As developed above, section 24-10-118(2.5), by its plain terms, permits public employees to "raise[] the issue of sovereign immunity," and instructs that the trial court's determination of the issue is subject to interlocutory appeal. This is thus the "immunity" to which public employees are entitled under section 24-10-118(2)(a) for claims that lie in tort or could lie in tort stemming from acts within the scope of

---

[5] The defendant in Brace had asserted the well-recognized federal qualified immunity defense against the plaintiff's federal claims, and the trial court simply adopted the same language to describe the defendant's CGIA defense. 919 P.2d at 237. This court seems to have simply accepted the trial court's articulation of section 24-10-118(2)(a) as providing "qualified immunity" as well. See id. In fact, the bulk of our opinion in Brace considered the issue of federal qualified immunity, id. at 238–43, an issue we do not address today.

employment and in performance of duties that are not willful and wanton. Because Martinez raised the issue of sovereign immunity in his motion to dismiss, he was entitled to an interlocutory appeal of the district court's denial of that motion.

¶26 It necessarily follows that the distinction we drew in Gallagher between immunity claims that raise a "basic prerequisite for immunity" (that is, the scope of employment determination) and those that do not (that is, the willful and wanton determination) is also untenable. Instead, we conclude that, like the scope of employment issue, whether a public employee's conduct is willful and wanton conduct under section 24-10-118(2)(a) implicates a public employee's sovereign immunity. Therefore, we hold that section 24-10-118(2.5) provides for interlocutory review of a trial court's resolution of the issue—no matter the grounds—of whether a public employee is entitled to sovereign immunity. Accordingly, we disavow language in Brace and Gallagher suggesting that because a public employee's claim of immunity is not a claim of sovereign immunity, its determination is not subject to interlocutory review. Brace, 919 P.2d at 245–46; Gallagher, 54 P.3d at 394–95.

¶27 It also follows that, in addition to interlocutory review, the determination regarding a public employee's claim to sovereign immunity is subject to all of the other procedures applicable to sovereign immunity determinations. Thus, when a public employee raises the issue of sovereign immunity, the trial court "shall suspend discovery" except for "discovery necessary to decide the issue of sovereign immunity." § 24-10-118(2.5). The trial court then "shall decide such issue [of sovereign immunity] on motion," a ruling that is subject to interlocutory review. Id. In interpreting the

14

identical procedures for public entity immunity under section 24-10-108,[6] we have held that trial courts must resolve all issues pertaining to sovereign immunity prior to trial, including factual issues, regardless of whether those issues pertain to jurisdiction. Trinity Broad. of Denver v. City of Westminster, 848 P.2d 916, 924–25 (Colo. 1993); Finnie v. Jefferson Cty. Sch. Dist. R-1, 79 P.3d 1253, 1259–60 (Colo. 2003). This may require the trial court to hold an evidentiary, or "Trinity," hearing in order to determine whether immunity applies. Trinity, 848 P.2d at 925; Finnie, 79 P.3d at 1259–60. We hold that Trinity and its progeny govern claims of public employee sovereign immunity as well.

¶28    In this case, the trial court erred when it failed to determine whether Martinez's conduct was willful and wanton. Instead, it determined that Bleck had sufficiently pled that Martinez acted in a willful and wanton manner, and that the ultimate determination of whether he in fact acted willfully and wantonly had to be left to trial. Because the trial court did not determine whether Martinez's conduct was willful and wanton, we remand this case for such a determination and a Trinity hearing, if the court deems it necessary.

---

[6] Section 24-10-108 provides:

> If a public entity raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity and shall decide such issue on motion. The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.

¶29   We now turn to Martinez's argument that the trial court applied an incorrect standard of willful and wanton conduct to determine that Bleck's claim was sufficiently pled.  Because the proper definition of willful and wanton conduct is an issue that will govern remand proceedings, we address that question here.[7]

¶30   In Moody v. Ungerer, 885 P.2d 200, 205 (Colo. 1994), we observed that the CGIA does not define willful and wanton conduct.  We then cited to three definitions of willful and wanton conduct from other contexts, finding that although these definitions were "not specifically applicable in the context of what constitutes willful and wanton conduct . . . , they persuade[d] us" that the defendant's conduct at issue in that case was not willful and wanton.  Id.  The parties here ask us to identify a single definition of willful and wanton conduct that is applicable in the CGIA context.  We need not choose from among definitions, however, as they all share a common feature—namely, a conscious disregard of the danger.

¶31   In Moody, for example, we cited Black's Law Dictionary for the proposition that willful and wanton conduct "must be not only negligent, but exhibit [a] conscious

---

[7] At the outset, we disagree with Bleck's argument that Martinez failed to preserve this issue for our review.  In particular, Bleck argues that Martinez did not argue for the precise definition of willful and wanton that he now presents to this court.  However, Bleck does not dispute that Martinez raised the issue of what definition of willful and wanton conduct should apply in this context, which is sufficient to preserve the issue for our consideration.

disregard for [the] safety of others." 885 P.2d at 205 (citing Black's Law Dictionary 1434–35 (5th ed. 1979)) (emphasis added). Similarly, we observed that the definition of willful and wanton in the exemplary damages statute is conduct "purposefully committed, which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to [the] consequences, or of the rights and safety of others, particularly the plaintiff." Id. (citing § 13-21-102(1)(b), 6A C.R.S. (1987)) (emphasis added). Finally, we noted that such conduct, in the guest statute context, is that which is "wholly disregardful of the rights, feelings and safety of others . . . at times even imply[ing] an element of evil." Id. (citing Pettingell v. Moede, 271 P.2d 1038, 1042 (Colo. 1954)) (emphasis added).

¶32 In this case, the trial court erred in applying a negligence standard, finding that Bleck had sufficiently alleged that Martinez "should have realized" that his conduct was dangerous. As we observed in Moody, however, willful and wanton conduct is not merely negligent; instead, it must exhibit a conscious disregard for the danger. Accordingly upon remand, in considering whether Martinez's conduct was willful and wanton, the trial court should determine whether Martinez's conduct exhibited a conscious disregard of the danger.

## III.

¶33 We reverse the court of appeals and remand for further proceedings consistent with this opinion.

17