24CA0219 Southway v Crone 12-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0219
Grand County District Court No. 22CV30063
Honorable Mary C. Hoak, Judge

Cynthia Southway and Hayden Southway,

Plaintiffs-Appellees,

v.

John Crone,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

Anthony J. DiCola, Hot Sulphur Springs, Colorado, for Plaintiffs-Appellees

Lasater & Martin, P.C., Peter H. Doherty, Greenwood Village, Colorado, for Defendant-Appellant

¶ 1 Defendant John Crone (Crone) appeals the district court's order denying his motion to dismiss the defamation claim brought by plaintiffs Cynthia Southway and Hayden Southway (collectively, the Southways) under the Colorado Governmental Immunity Act (CGIA), sections 24-10-101 to -120, C.R.S. 2024. We reverse the order and remand for additional findings.

## I.     Background

¶ 2 The parties in this matter were each involved with local government affairs in the town of Grand Lake, Colorado. Cynthia[1] served on the town's Board of Trustees starting in April 2018 while her husband, Hayden, had been a member of the Planning and Zoning Commission. Cynthia was also a part of the hiring committee that selected Crone as Town Manager in October 2019.

¶ 3 After Crone was hired, several conflicts arose between him and the Southways. Cynthia challenged Crone's use of government-owned vehicles, a proposed salary increase for his role, his

---

[1] Because Cynthia and Hayden Southway share the same last name, we use their first names when referring to them individually. We mean no disrespect in doing so.

treatment of town employees, and an alleged conflict of interest related to Crone's purchase of a property.

¶ 4     Meanwhile, Crone began conducting an investigation into a Grand Lake property that the Southways leased from the property owner for horse grazing and breeding.  He expressed concern that (1) the Southways' use of their leased property for for-profit ranching violated the governing zoning ordinances and (2) the same use formed the basis for the property's "agricultural" classification for tax purposes, causing the town to lose significant property tax revenue.  Crone testified that the investigation fell within his purview as Town Manager because both zoning and property use had tax implications, and his job was to "build up" the tax base of the town.

¶ 5     The parties communicated about the zoning and taxation issues in January and February 2021 but did not reach any resolution.

¶ 6     In September 2021, Cynthia reminded the executive committee of the Board of Trustees that Crone's annual job performance evaluation should have been started the prior month. On September 14, Cynthia followed up with Grand Lake's mayor,

urging him to start Crone's evaluation ahead of recall elections scheduled for the following month.

¶ 7     The next day, Crone sent an email about the Southways' leased property from his town-issued email account to the Grand Lake mayor and trustees (September 15 email). The email — the subject of the Southways' defamation claim against Crone — read as follows:

> Trustees,
>
> In January of this year, I discovered that Trustee Southway had been conspiring with the owners of the 15-acre parcel where the Southways keep their horses to have the property assessed as agricultural. In order to be assessed as agricultural, the property must be used for a for-profit ranch. **Town Code does not allow such use in <u>any</u> of our zoning areas.** In their various roles as Trustee and as a Planning Commissioner, knowledge of the Town Codes can be imputed to the Southways. In fact, Hayden Southway was actually on the Planning Commission the last time that this property's zoning was revised. County Assessor Tom Weydert served on the Town Board at times when this scheme was in operation and never informed the Town despite his oath to uphold the Town code. As a result of the scheme, in 2021 only $22.02 in taxes were charged against the 15.4 acre parcel. In contrast, I have paid $1,023.48 on my .2 acre parcel on the edge of town. Over the years, the Southways scheme has cost the

3

Town, the school district, the rec. district, the fire department, and other public entities tens of thousands of dollars in lost revenue (if not hundreds of thousands).

Trustee Southway was informed of their illegal actions in January. At that time, I treated the Southways as I treat any code violators: I informed them of their illegal actions and offered them several options to correct their actions. The Mayor, the then Mayor Pro Tem, and our Town Attorney were all included in the discussions. To date, the Southways have not taken any actions to correct their violations. In fact, recent actions taken by the Southways indicate that they have no intention of cooperating with the Town to solve this very distressing situation.

As a result of the Southways' resistance to take responsibility for their illegal actions, I feel compelled to officially bring these ethical violations to the Board's attention for action. I am also meeting with the District Attorney for the 14th Judicial District to ask for a criminal investigation.

Please feel free to contact me with any questions.

John F. Crone, J.D.

¶ 8 The Southways then filed the underlying defamation suit against Crone, alleging that the September 15 email resulted in harm to their reputation, credit standing, and profits from their personal businesses. Crone moved to dismiss, asserting that he

4

was entitled to immunity under the CGIA because he was acting within the scope of his employment and his actions were not "willful and wanton."

¶ 9    The district court entered an order addressing Crone's underlying contention that willful and wanton conduct required the conscious disregard of a risk of physical harm to the plaintiff. The court concluded it did not, ruling,

> [W]illful and wanton conduct generally means a conscious disregard for the danger or consequences of one's actions to the rights and safety of others. The Court agrees with the Southways that willful and wanton conduct does not necessarily equate to a conscious disregard of the danger of the physical safety of others.

¶ 10    The court also concluded that the scope of Crone's employment and the nature of his conduct presented disputed issues of fact, so it ordered an evidentiary hearing pursuant to *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993) (*Trinity* hearing).

¶ 11    After the *Trinity* hearing, the court concluded that Crone was acting within the scope of his employment when he sent the September 15 email, but he wasn't immune from liability because

5

his conduct was willful and wanton. Accordingly, it denied Crone's motion to dismiss. Crone appeals.

## II. Foundational CGIA Law

¶ 12   The CGIA shields governmental entities and public employees from tort liability in certain circumstances. *See* § 24-10-102, C.R.S. 2024. A "public employee" is an officer or employee of a "public entity," and a "public entity" includes any "political subdivision" of the state "organized pursuant to law." § 24-10-103(4)(a), (5), C.R.S. 2024.[2]

¶ 13   Section 24-10-118(2)(a), C.R.S. 2024, provides:

> A public employee shall be immune from liability *in any claim for injury . . . which lies in tort or could lie in tort . . .* and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment *unless the act or omission causing such injury was willful and wanton.*

(Emphasis added.)

¶ 14   Thus, as relevant here, the CGIA provides a public employee with immunity from tort liability except when (1) the conduct that caused the injury was willful and wanton or (2) the conduct

---

[2] It's undisputed that Crone is a public employee.

occurred outside of the scope of employment. *Hernandez v. City &*
*Cnty. of Denver*, 2018 COA 151, ¶ 9.

¶ 15 Whether a public employee is immune from suit under the
CGIA is a question of subject-matter jurisdiction that must be
determined pursuant to C.R.C.P. 12(b)(1). *Trinity Broadcasting*, 848
P.2d at 923-25. The district court must resolve all issues
pertaining to sovereign immunity — and may be required to hold a
*Trinity* hearing where appropriate — prior to trial. *Martinez v. Est.*
*of Bleck*, 2016 CO 58, ¶ 27 (holding that "*Trinity* and its progeny
govern claims of public employee sovereign immunity"). In a *Trinity*
hearing, "the trial court, rather than a jury, is the finder of fact and
resolves any factual dispute on which sovereign immunity
depends." *Hernandez*, ¶ 6; *see also Tidwell v. City & Cnty. of*
*Denver*, 83 P.3d 75, 85-86 (Colo. 2003) ("When the alleged
jurisdictional facts are in dispute, the trial court should conduct an
evidentiary hearing and enter findings of fact.").

### III.   "Willful and Wanton" Standard

¶ 16 Crone contends that the district court erred by determining
that his September 15 email constituted "willful and wanton"
conduct. He argues, as he did below, that (1) willful and wanton

7

conduct requires a disregard of a risk of physical injury and (2) even if it doesn't, the district court erred by concluding that his conduct was willful and wanton. We reject Crone's first argument but, because we can't discern whether the court correctly applied the willful and wanton standard, we reverse and remand for further findings.

## A. Standard of Review

¶ 17 An appellate court will not disturb a trial court's findings of jurisdictional fact following a *Trinity* hearing unless they are clearly erroneous. *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001); *Maphis v. City of Boulder*, 2022 CO 10, ¶ 14. However, we review de novo whether the trial court applied the correct legal standard in determining whether Crone's conduct was willful and wanton, *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 897-98 (Colo. 2008), and whether it correctly interpreted the CGIA, *Medina*, 35 P.3d at 452-53.

¶ 18 When interpreting a statute, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or

absurd results." *Elder v. Williams*, 2020 CO 88, ¶ 18. "We do not add or subtract words from the statute, and if the language is unambiguous, we 'give effect to its plain and ordinary meaning and look no further.'" *City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 12 (quoting *Smokebrush Found. v. City of Colorado Springs*, 2018 CO 10, ¶ 18).

## B.    *Martinez v. Estate of Bleck*

¶ 19    In *Martinez,* the plaintiff sued an Alamosa police officer for excessive force and battery when the officer injured the plaintiff through accidental discharge of his police weapon. 2016 CO 58, ¶ 1. The officer moved to dismiss the claim, arguing that he was immune from liability because his conduct was not willful and wanton. *Id.* at ¶ 2. The trial court denied the motion to dismiss, concluding, as relevant here, that the defendant "should have" known that his conduct was dangerous. *Id.* at ¶¶ 10-11.

¶ 20    The Colorado Supreme Court reversed. *Id.* at ¶ 6. After observing that the CGIA doesn't define willful and wanton conduct, the court turned to earlier definitions of such conduct from other contexts:

- Willful and wanton conduct "must be not only negligent, but exhibit [a] *conscious disregard for* [*the*] *safety of others*." *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (quoting Black's Law Dictionary 1434-35 (5th ed. 1979)) (emphasis added).

- For purposes of exemplary damages, willful and wanton conduct is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, *without regard to consequences, or of the rights and safety of others*, particularly the plaintiff." *Id.* (quoting § 13-21-102(1)(b), C.R.S. 1987) (emphasis added).

- In the automobile guest statute, willful and wanton conduct was defined as action that is "wholly *disregardful of the rights, feelings and safety of others* . . . at times even imply[ing] an element of evil." *Id.* (alteration in original) (quoting *Pettingell v. Moede*, 271 P.2d 1038, 1042 (1954)) (emphasis added).

¶ 21   The *Martinez* court declined to choose a single definition of willful and wanton conduct for the CGIA, noting that the common thread between all other definitions is "a conscious disregard of the

danger." *Martinez*, ¶ 30. Accordingly, the supreme court held that the trial court erred by wrongly applying the negligence standard ("should have" known) when determining whether the police officer's conduct was willful and wanton. *Id.* at ¶ 6. It directed the trial court on remand to instead consider whether the officer's conduct exhibited a "conscious disregard for safety of others." *Id.*

### C. Analysis

#### 1. Risk of Physical Injury Not Required

¶ 22 Relying on *Martinez*, Crone argues that, for a defendant's conduct to be willful and wanton, the defendant must consciously disregard a "probable risk of *physical injury*" to the plaintiff. We reject his argument for two reasons.

¶ 23 First, Crone's interpretation would effectively make it impossible for a plaintiff to sue a public employee for actions resulting in nonphysical injuries so long as the employee's actions occurred within the scope of their employment. Such a result is contrary to the plain language of the CGIA.

¶ 24 Under section 24-10-118(2)(a), public employees who act in a willful and wanton manner — even if acting within the scope of their employment — have no immunity "from *any claim for injury*

that lies in tort . . . or could lie in tort." (Emphasis added.) The CGIA broadly defines "injury" to include "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort." § 24-10-103(2). Interpreting this section, the Colorado Supreme Court has concluded that "the plain terms of section 24-10-103(2) clearly express an intent to include within the meaning of 'injury' any type of injury that would be actionable in tort if inflicted by a private person." *Lee v. Colo. Dep't of Health*, 718 P.2d 221, 230 (Colo. 1986) (holding that loss of consortium is an "injury" under the CGIA that gives rise to a separate right of recovery for a spouse).[3] Damage to one's reputation from defamatory statements has long been recognized as a personal injury in tort. *See Keohane v. Stewart*, 882 P.2d 1293, 1297-98 (Colo. 1994) (discussing the history of defamation claims).

---

[3] At the time *Lee* was decided, the CGIA defined "injury" as "death, injury to a person, [and] damages to or loss of property, of whatsoever kind, which would be actionable in tort if inflicted by a private person." *Lee v. Colo. Dep't of Health*, 718 P.2d 221, 230 (Colo. 1986) (alteration in original) (quoting § 24-10-103(2), C.R.S. 1982). The minor differences between the 1982 version of the CGIA and the current version don't affect our analysis.

¶ 25     Thus, sections 24-10-118(2)(a) and 24-10-103(2), read together, reveal that the legislature plainly intended for plaintiffs suffering nonphysical injuries to be able to seek redress if those injuries were caused by a public employee's willful and wanton conduct.  Because we must construe the CGIA's grant of immunity narrowly and its waiver provisions broadly, *County of Jefferson v. Stickle*, 2024 CO 7, ¶ 10, we reject Crone's definition of "willful and wanton."

¶ 26     Second, *Martinez* doesn't stand for the principle that a defendant must disregard a risk of physical injury to act in a willful and wanton manner.  In fact, the supreme court specifically declined to adopt a single definition for willful and wanton conduct under the CGIA.  *Martinez,* ¶ 30.  To the extent *Martinez* references risks to a plaintiff's physical safety, it didn't do so to limit the applicability of the "willful and wanton" exception to circumstances involving a risk of physical harm.  Rather, as the district court correctly observed, the disregard of danger to one's physical safety was relevant in *Martinez* simply because the plaintiff's claim involved physical injury from the discharge of a weapon.  And the common defining feature of willful and wanton conduct articulated

13

in *Martinez* — a "conscious disregard of the danger" — is broad enough to apply to both physical and nonphysical danger or risk. *Id.*

¶ 27    Here, the district court concluded that "willful and wanton conduct generally means a conscious disregard for the *danger or consequences* of one's actions to the rights and safety of others." This standard is consistent with the principles articulated in *Martinez*, and it is supported by at least one prior decision from a division of this court applying a similar standard in a defamation claim against a public employee. *See Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005) (noting that the plaintiff must allege specific facts to show that the public employee "was aware [that] [their] conduct would cause the alleged harm" or that their conduct "was specifically calculated to cause the alleged harm").

¶ 28    We further conclude that, because defamation claims generally seek to remedy injury to one's reputation, the danger or risk that Crone must consciously disregard is the danger that he might damage someone's reputation by spreading untrue statements about that person. *Cf. Duke v. Gunnison Cnty. Sheriff's Off.*, 2019 COA 170, ¶ 37 (holding that, in cases involving physical injury or

14

death, willful and wanton conduct requires "knowledge and conscious disregard of a health danger to another").

### 2. Trial Court Application of Willful and Wanton Standard

¶ 29    Although we agree that the district court generally articulated the correct standard for willful and wanton conduct, additional findings are necessary for us to discern whether the court correctly applied the standard.

¶ 30    After the *Trinity* hearing, the district court entered a verbal order explaining its reasoning for denying Crone's motion to dismiss. The court concluded that Crone's conduct exhibited a "conscious disregard of the danger and consequences of his actions as to the rights . . . of the Southway[s]" because (1) the language Crone used in the September 15 email was "hyperbol[ic]," "exaggerated," and "scathing"; (2) the accusations of conspiracy were "serious"; and (3) the court saw no evidence of any conspiracy.

¶ 31    However, shortly after reaching the conclusion that Crone exhibited a "conscious disregard" of the danger, the court said that Crone "did not think of what the reactions or the consequences" would be when he sent the email, concluding "that's why it's willful[] and wanton conduct *because Mr. Crone didn't think*." If

15

Crone "didn't think" of the consequences of his actions, he couldn't have consciously disregarded them. *See Martinez*, ¶ 32 (distinguishing between whether the defendant "should have realized" the danger of his conduct and whether he "conscious[ly] disregard[ed]" it). Due to these conflicting findings, we can't discern whether the court correctly applied the willful and wanton standard in concluding that Crone's actions rose to that level. We therefore reverse the district court's order and remand the case with instructions to reconsider, based on the existing record, whether Crone consciously disregarded the danger or risk that he might cause reputational harm by spreading untrue statements that paint the subject of the statements in a negative light. *Cf. In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 43 (reversing a district court order and remanding for new findings under the legal standard set forth in the opinion).

## IV.   Disposition

¶ 32    The order is reversed, and the case is remanded for further findings based on the existing record and consistent with this opinion.

JUDGE FREYRE and JUDGE GROVE concur.