**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DONALD WILLIAM SCHMITZ,

    Plaintiff - Appellee,

v.

COLORADO STATE PATROL; STATE
TROOPER BEN EVANS, individually and
in his official capacities with Colorado
State Patrol; UNKNOWN SUPERVISOR,
Colorado State Patrol,

    Defendants - Appellants,

and

PARK COUNTY SHERIFF'S OFFICE;
SGT. JENNIFER PLUTT, in her individual
and official capacities with Park County
Sheriff's Office; SGT. COOPER, in his/her
individual and official capacities with Park
County Jail; DEPUTY LEDVINA, in
his/her individual and official capacities
with Park County Jail; UNKNOWN
DEPUTIES OF THE PARK COUNTY
JAIL; PARAMEDIC DAVE SANDERS,
in his individual and official capacities
with South Park Ambulance Department,

    Defendants.

No. 20-1045
(D.C. No. 1:19-CV-00353-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

––––––––––––––––––––––––––––––––––

Before **LUCERO**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

––––––––––––––––––––––––––––––––––

**PHILLIPS**, Circuit Judge.

––––––––––––––––––––––––––––––––––

Colorado State Trooper Ben Evans came across Appellee Donald Schmitz late one night after Schmitz had hit a guardrail with his car. Trooper Evans quickly recognized that Schmitz was out of sorts: he didn't know where he was, he struggled to answer simple questions, and he said his head hurt. So Trooper Evans conducted several sobriety tests, each of which Schmitz failed. But Trooper Evans didn't smell even a hint of alcohol. After talking it over with his sergeant, Trooper Evans nonetheless arrested Schmitz for driving under the influence of drugs. At no point did Trooper Evans call for medical professionals to assess Schmitz despite his concerning condition. As it turned out, Schmitz's symptoms weren't the result of drugs or alcohol. A blood test revealed no traces of either substance. But the test did detect in Schmitz's blood elevated levels of ammonia, caused by the sudden onset of a liver problem and necessitating a three-day hospital stay immediately after Schmitz was released from jail. Schmitz's liver condition likely caused his confusion and the ensuing car crash.

Among other things, Schmitz asserted a state tort claim against Trooper Evans for failing to ensure he received adequate medical attention. Trooper Evans moved to dismiss the claim on state immunity grounds: Colorado law shields public employees from suit unless they engage in "willful and wanton" conduct. Although Trooper

2

Evans argued that Schmitz's allegations amounted to no more than negligence, the district court disagreed and denied Trooper Evans's motion. Trooper Evans now asks that we reverse that denial. But because we conclude that Schmitz sufficiently alleged that Trooper Evans acted willfully and wantonly, we affirm.

## BACKGROUND

### I. Factual Background

While driving home from work late at night in May 2018, Schmitz became disoriented and crashed his car into a guardrail near Fairplay, Colorado. Just after midnight, Trooper Evans arrived at the scene and found Schmitz in his car. Trooper Evans quickly realized that Schmitz "was very confused"; he didn't know where he was going or coming from. App. at 68. Although Schmitz repeatedly said that he was heading "just up the road," Trooper Evans later learned that Schmitz had already driven past his house. *Id.* (quoting App. at 14). In directing Schmitz to get out of the car, Trooper Evans had to repeatedly tell Schmitz to unbuckle his seatbelt. When exiting the car, Schmitz closed the door on his arm and had to use his car for support. Moving slowly, Schmitz stated that he was "waiting for his head to get out." *Id.* (quoting App. at 15).

Apparently suspecting that Schmitz was drunk, Trooper Evans conducted three field-sobriety tests. Schmitz failed all three. Trooper Evans recorded his observations of several "indicia of impairment, including slow hand movements, confusion, inappropriate answers to simple question[s] and using the vehicle to exit." *Id.* (quoting App. at 15). Yet he didn't smell alcohol. Trooper Evans discussed the matter

3

with his sergeant and, at the sergeant's direction, arrested Schmitz for driving under the influence of drugs.

Trooper Evans took Schmitz to Park County Jail. When Schmitz arrived "he was visibly flushed, had an elevated pulse, could not support his own weight, and did not understand questions." *Id.* at 69. He stayed at the jail overnight and continued to exhibit the same symptoms. At some point during the night, he lost control of his bowels, defecating in his clothing.

While at the jail, Schmitz provided a urine sample and agreed to a blood test and a drug-recognition expert evaluation. His tests results came back negative for illicit drugs and showed a blood alcohol concentration of zero. His urinalysis, however, showed large quantities of blood in his urine. Despite his symptoms, no one at the jail provided any kind of medical care, assistance, or monitoring.

Schmitz's wife picked him up at 10 a.m. the next morning. One of the staff medical providers advised Mrs. Schmitz to take her husband to the emergency room immediately, which she did. Schmitz remained at the hospital for three days. He was diagnosed with acute hepatic encephalopathy[1] and acute kidney injury, complications stemming from his liver cirrhosis. These conditions resulted in elevated ammonia levels in his blood, likely causing his confusion the previous night.

---

[1] "Hepatic encephalopathy is ammonia in the brain caused by . . . liver malfunction." App. at 17.

## II.     Procedural History

Schmitz sued the Colorado State Patrol ("State Patrol"), Trooper Evans, an unknown supervising officer (collectively, "Appellants"), and several other state and county officials under 42 U.S.C. § 1983 and Colorado tort law. Schmitz asserted four claims against Appellants—two federal and two state. First, he claimed Trooper Evans lacked probable cause to arrest him, violating his Fourth and Fourteenth Amendment rights. Second, he claimed Trooper Evans displayed deliberate indifference to his serious medical needs, violating his Eighth and Fourteenth Amendment rights.[2] Third, he asserted a claim based on "Supervisory Liability" and "Official Capacity" against the State Patrol. *Id.* at 20. Fourth, he claimed Trooper Evans and the State Patrol violated Colorado tort law by failing to provide him appropriate medical attention.

Appellants moved to dismiss all claims against them. In opposing the Motion to Dismiss, Schmitz supported his claims with new allegations—not included in the Complaint—based on dashcam video of the arrest. The video of the interaction captured Trooper Evans asking Schmitz whether he took any medications. Schmitz responded that "he took a lot of medication but had not taken them that day." *Id.* at 48. When another officer arrived, Trooper Evans asked if they should have "medical"

---

[2] Schmitz asserted this same claim against the Park County Sheriff's Office and various officials at the Park County Jail. Although the district court granted qualified immunity to Trooper Evans, it allowed Schmitz's deliberate-indifference claim against the individual Park County defendants to advance.

respond or see if they could contact someone he lived with to corroborate whether he "was off his medications." *Id.* The officers took neither action.[3]

The district court granted most of Appellants' Motion to Dismiss, allowing only Schmitz's state tort claim to advance against Trooper Evans and the State Patrol.[4] On the two constitutional claims, the district court ruled that Trooper Evans was entitled to qualified immunity because his conduct "was not a violation of clearly established law." *Id.* at 74; *id.* at 73 ("Mr. Schmitz did not present case law indicating that the constitutional question was beyond debate."). Because the district court determined that Trooper Evans didn't violate clearly established law, it didn't consider whether his actions amounted to constitutional violations.

Addressing the state tort claim, Appellants argued that the Colorado Governmental Immunity Act (the "Immunity Act" or "Act") barred Schmitz's claim. Specifically, Appellants asserted that the Act (1) completely immunizes public entities and (2) immunizes public employees from suit unless they engage in willful and wanton conduct. Appellants maintained that Schmitz had failed to sufficiently allege willful and wanton conduct in his Complaint. From that, they argued that Colorado had not waived its sovereign immunity regarding Schmitz's claim against

---

[3] We include these allegations only because Appellants argue that the district court improperly relied upon them in denying their Motion to Dismiss. But we don't consider them when deciding whether Schmitz adequately pleaded a claim alleging willful and wanton conduct.

[4] The district court retained supplemental jurisdiction over Schmitz's state tort claim because the court allowed some of his federal claims against other state defendants to move forward.

Trooper Evans, thus depriving the district court of subject-matter jurisdiction. The district court disagreed, ruling that Schmitz had sufficiently alleged that Trooper Evans had acted willfully and wantonly. The district court also found that Schmitz's tort claim could proceed against the State Patrol under a theory of vicarious liability. This appeal followed.

## DISCUSSION

Appellants appeal the portion of the district court's Order allowing Schmitz's state tort claim to advance against Trooper Evans and the State Patrol. After setting out the applicable legal framework, we consider Schmitz's jurisdictional challenges, Appellants' substantive arguments, and Schmitz's request for sanctions. Although we agree with Appellants that Schmitz's tort claim cannot proceed against the State Patrol, we affirm the district court's ruling allowing the claim to advance against Trooper Evans.

## I.      Legal Framework

### A.      The Immunity Act

Colorado's Immunity Act provides the following limited sovereign immunity to public employees:

> A public employee shall be immune from liability in any claim for injury . . . which lies in tort or could lie in tort . . . and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment *unless the act or omission causing such injury was willful and wanton . . . .*

7

Colo. Rev. Stat. § 24-10-118(2)(a) (emphasis added). Although the Act nowhere defines "willful and wanton," Colorado's courts have defined the term (discussed below).

The Act also grants sovereign immunity to public entities: "A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort . . . except as provided otherwise in this section." *Id.* § 24-10-106(1). The section then lists nine exceptions, none of which applies here. *Id.* § 24-10-106(1)(a)–(i).

"Because [the Immunity Act] derogates the common law, courts must strictly construe provisions that grant immunity, broadly construe the provisions that waive immunity, and strictly construe exceptions to waivers in favor of compensating victims." *Duke v. Gunnison Cnty. Sheriff's Off.*, 456 P.3d 38, 42 (Colo. App. 2019) (citing *Medina v. State*, 35 P.3d 443, 453 (Colo. 2001); and then *Dempsey v. Denver Police Dep't*, 353 P.3d 928, 931–32 (Colo. App. 2015)). Further, though the plaintiff bears the burden to prove that a public employee has waived the right to sovereign immunity, *Gray v. Univ. of Colo. Hosp. Auth.*, 284 P.3d 191, 195 (Colo. App. 2012), "'the burden is a relatively lenient one,' as there is no presumption of sovereign immunity, and plaintiffs 'should be afforded the reasonable inferences of [their] evidence.'" *Duke*, 456 P.3d at 44 (brackets in original) (quoting *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 85–86 (Colo. 2003)).

## B. Colorado State Law Procedures

Colorado—in statutes and through its courts—has established particular procedures for assessing claims that implicate a public employee's sovereign

8

immunity. *See Martinez v. Estate of Bleck*, 379 P.3d 315, 322 (Colo. 2016) ("[T]he determination regarding a public employee's claim to sovereign immunity is subject to all of [Colorado's] procedures applicable to sovereign immunity determinations."). Two of those procedures are relevant here.

First, Colorado imposes a heightened pleading requirement for plaintiffs alleging that a public employee acted willfully and wantonly. *See* Colo. Rev. Stat. § 24-10-110(5)(a) ("In any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint."). Second, even if the complaint contains sufficient allegations to support a claim against a public employee for willful and wanton conduct, the trial court, not a jury, must determine whether the employee is entitled to sovereign immunity. *See Martinez*, 379 P.3d at 322 ("The trial court . . . 'shall decide such issue [of sovereign immunity] on motion[.]'" (quoting Colo. Rev. Stat. § 24-10-118(2.5))). Thus, in *Martinez*, the Colorado Supreme Court concluded that "the trial court erred" when "it determined that [Plaintiff] had sufficiently pled that [Defendant] acted in a willful and wanton manner, and that the ultimate determination of whether he in fact acted willfully and wantonly had to be left to trial." *Id.* Instead, the court remanded the case to the district court "to determine whether [Defendant's] conduct was willful and wanton." *Id.*; *see also L.J. v. Carricato*, 413 P.3d 1280, 1288 (Colo. App. 2018) ("[I]t is not enough for the district court to merely determine that the complaint adequately alleged that the conduct was willful and wanton. The district court must determine whether the

9

conduct was in fact willful and wanton." (citing *Martinez*, 379 P.3d at 317–18, 322)).

In making this early immunity determination, Colorado trial courts may conduct what has become known as a *Trinity* hearing, effectively an evidentiary hearing dedicated solely to considering an employee's possible immunity from suit. *See Martinez*, 379 P.3d at 322; *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924–25 (Colo. 1993).

But we're unpersuaded that any of these procedural rules relating to Colorado's Immunity Act apply in federal court because "the *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law." *See, e.g.*, *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) (citations omitted). At the outset, we emphasize that, in crafting their arguments, the parties merely assume the state procedures apply without so much as a passing reference to the governing caselaw for assessing whether a state procedural law applies in federal court*,* namely, *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) and *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393 (2010). Bereft of any substantive briefing from the parties on these issues, we're ill-equipped to conduct the kind of intensive analysis that *Erie* and *Shady Grove* generally require.

Even so, our abbreviated review suggests that Colorado's procedural law doesn't apply here. Though it appears that our precedents have yet to address this issue, other circuits have concluded that a state's heightened pleading requirements don't control in federal court. *See Gallivan v. United States*, 943 F.3d 291, 293–96 (6th Cir. 2019) (holding that Ohio's heightened pleading standard requiring prisoners

10

to submit a merits affidavit with their complaint didn't apply in federal court); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) ("[W]here a state . . . requires heightened pleading requirements in the complaint, [those] rules . . . do not apply in federal court, even in cases based on diversity jurisdiction." (internal quotation marks, brackets, and citation omitted)); *see also Glob. View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 478 (S.D.N.Y. 2003) ("Heightened pleading requirements for particular state causes of action do not apply in federal court." (citing *Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 n.2 (2d Cir. 1971))). And we recently rejected an argument that Colorado's procedural rules governing the Immunity Act apply in federal court. *See Scott v. Cary*, 829 F. App'x 334, 336–37 (10th Cir. 2020) (unpublished) (emphasis added) ("Defendants cite *Martinez v. Estate of Bleck*, 379 P.3d 315, 322 (Colo. 2016), for the proposition that Colorado requires courts to decide the issue of sovereign immunity on motion before trial. *But state procedural law ordinarily does not govern proceedings in federal court*; and in any event there are adequate federal procedures for disposing of immunity issues before trial . . . ."). Because Appellants present no contrary authority or argument, we will assume for purposes of this appeal that Colorado's procedural laws don't bind us here.

## II.     Appellate Jurisdiction

Schmitz raises two jurisdictional objections. First, Schmitz asserts that Appellants' arguments go beyond their Notice of Appeal. Second, Schmitz contends

11

this action constitutes an impermissible interlocutory appeal. Neither argument has merit.

## A. Appellants' Notice of Appeal Satisfies Our Jurisdictional Requirements

Schmitz accuses Appellants of arguing "issues outside the scope of the notice of appeal." Appellee's Resp. Br. at 1. According to Schmitz, Appellants may raise only arguments specifically identified in the Notice of Appeal ("Notice"). *See id.* at 2 ("Any arguments beyond those noticed are not subject to appellate review."). That's not the case.

Our rules require only that the notice of appeal (1) "specify the party or parties taking the appeal," (2) "designate the judgment, order, or part thereof being appealed[,]" and (3) "name the court to which the appeal is taken." Fed. R. App. P. 3(c)(1)(A)–(C). Although Schmitz correctly notes that "Rule 3's dictates are jurisdictional in nature," *Smith v. Barry*, 502 U.S. 244, 248 (1992), the Supreme Court has directed courts to "liberally construe the requirements of Rule 3," *id.* Accordingly, we have noted that a Rule 3 notice "need not be perfect" and have cautioned against "hypertechnical" rulings "that a notice of appeal does not challenge a judgment or order that the appellant clearly wished to appeal." *Sines v. Wilner*, 609 F.3d 1070, 1074 (10th Cir. 2010). Rather, the notice suffices to confer jurisdiction "so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced." *Id.* (quoting

12

*Sanabria v. United States*, 437 U.S. 54, 67 n. 21 (1978); and then citing *Fleming v. Evans*, 481 F.3d 1249, 1253–54 (10th Cir. 2007)).

Appellants' Notice easily meets Rule 3's requirements. The Notice states:

Defendants Colorado State Patrol, State Trooper Ben Evans and Unknown Supervisor . . . hereby give notice of their intent to file an interlocutory appeal of [the district court's] Order . . . denying their Motion to Dismiss the claims against them on grounds of immunity as required by the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101, *et seq.*, while granting qualified immunity to Defendant Evans, to the United States Court of Appeals for the Tenth Circuit.

App. at 103. The Notice designates the parties taking the appeal, the order (and the "part thereof") being appealed, and the court to which the appeal is taken. *See* Fed. R. App. P. 3(c)(1)(A)–(C). Nothing more is required.

Undeterred, Schmitz cites *Cunico v. Pueblo School District No. 60*, 917 F.2d 431 (10th Cir. 1990), for the proposition that "[o]nly the portions of a final judgment designated in the notice of appeal can be reviewed by the appellate court." Appellee's Resp. Br. at 1. But *Cunico* doesn't apply here. In *Cunico*, the notice of appeal identified the district court's attorney-fee award as the basis for its appeal, but the plaintiff later sought review of the trial court's denial of costs. 917 F.2d at 444. Because "[p]laintiff clearly intended to appeal only a portion of the trial court's order respecting damages and fees," we concluded that we lacked jurisdiction to hear the costs issue. *Id.* Here, in contrast, Appellants clearly identified the issue on appeal: the district court's ruling that the Immunity Act didn't bar Schmitz's tort claim. That Appellants attack the district court's ruling on multiple grounds doesn't render their notice insufficient. Besides, Schmitz fails to allege any prejudice he suffered because

13

of Appellants' allegedly deficient notice. For these reasons, Appellants' notice meets all the required elements to support jurisdiction here.

**B.      We Have Jurisdiction to Review This Appeal Under the Collateral-Order Doctrine**

Schmitz further contends we lack jurisdiction to hear this interlocutory appeal because Appellants allegedly mount "a sufficiency of the evidence argument which is not appealable at this time." Appellee's Resp. Br. at 1. Schmitz is mistaken. Appellants challenge not the sufficiency of Schmitz's evidence but the sufficiency of his *allegations*. Even a casual reading of Appellants' briefs reveals that they primarily argue that Schmitz's allegations fall short of alleging willful and wanton conduct. As a result, Appellants maintain that the district court should have granted their Motion to Dismiss based on their supposed immunity from suit. ***See id.*** The question that we must answer, then, is whether we have jurisdiction to hear an interlocutory appeal of a district court's decision denying state defendants' Motion to Dismiss based on immunity under Colorado's Immunity Act. The answer is "yes."

We squarely addressed this issue in *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hospital District*, 353 F.3d 832 (10th Cir. 2003). There, the defendant hospital brought an interlocutory appeal from the district court's denial of its claim that Colorado's Immunity Act barred the plaintiff's suit. *Id.* at 835. We rejected the hospital's argument that we lacked subject-matter jurisdiction to hear the appeal. *Id.* at 837. We held that, under "the federal collateral order doctrine, we have subject matter jurisdiction to hear 'appeals of orders denying motions to dismiss

14

where the motions are based on immunity from suit.'" *Id.* (quoting *Decker v. IHC Hosps., Inc.*, 982 F.2d 433, 435 (10th Cir. 1992)). The dispositive inquiry turns on the scope of the state law granting immunity: we have subject-matter jurisdiction when the state law grants "immunity from suit," not "merely immunity from liability." *Id.* (internal quotation marks and citation omitted). Because Colorado's Immunity Act granted governmental entities like the defendant hospital immunity from suit, we concluded that we had subject-matter jurisdiction to hear the appeal. *Id.*

*Aspen Orthopaedics* governs this case. Like the defendant hospital, the State Patrol is a governmental entity that the Immunity Act affords immunity from suit. *See* Colo. Rev. Stat. § 24-10-106(1)(a)-(i). The only remaining question is whether the Immunity Act similarly grants public employees (like Trooper Evans) immunity from suit. It does. *See id.* § 24-10-118(2)(a). Although the Immunity Act describes Appellants' immunity as "immun[ity] from liability," *id.* §§ 24-10-106(1), 24-10-118(2)(a), the Colorado Supreme Court has repeatedly characterized that language as conferring immunity from suit, *see, e.g.*, *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver*, 25 P.3d 1176, 1180 (Colo. 2001) ("The [Immunity Act] establishes *immunity from suit* for public entities and their employees in tort cases." (emphasis added) (citing *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000); and then citing Colo. Rev. Stat. § 24-10-106)). Because the Immunity Act grants both Trooper Evans and the State Patrol immunity from suit, we have subject-matter jurisdiction under the federal collateral-order doctrine. *See Sawyers v. Norton*, 962 F.3d 1270, 1287 (10th Cir. 2020) ("[P]ursuant to the federal collateral order

15

doctrine, we have subject matter jurisdiction to hear appeals of orders denying motions to dismiss where the motions are based on [state-law] immunity from suit." (second alteration in original) (internal quotation marks and citations omitted)).

Arguing against jurisdiction, Schmitz relies on *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019). There, we declined to exercise jurisdiction over a Colorado police officer's interlocutory appeal from a denial of summary judgment based on immunity grounds. *Husk*, 919 F.3d at 1222. But *Husk* is unhelpful for Schmitz. Our decision didn't question the reasoning or holding of *Aspen Orthopaedics*; rather, we refused to exercise jurisdiction because of the officer's deficient legal argument. That is, the defendant police officer "incorrectly assert[ed] that we have jurisdiction to consider . . . his interlocutory appeal because Colorado law provides for such an interlocutory appeal from the denial of immunity under the [Immunity Act]." *Id.* at 1223. Noting that federal law controls the appealability of the district court's order, we concluded that the officer failed to meet his burden to provide a basis "grounded in federal law" to consider his interlocutory appeal. *Id.* ("It is appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear h[is] appeal." (internal quotation marks and citation omitted)). Here, Appellants don't make the same mistake: they demonstrate that the federal collateral-

16

order doctrine provides us with jurisdiction. So Appellants have met their burden of establishing appellate jurisdiction.

## III. The District Court Rightly Permitted Schmitz's State Tort Claim to Advance Against Trooper Evans

Of Appellants' three asserted grounds for reversal, two relate to Trooper Evans and one relates to the State Patrol.[5] As to Trooper Evans, Appellants argue that (1) the district court reached its decision by impermissibly relying on facts not pleaded in the Complaint; and (2) Schmitz failed to allege sufficient facts establishing that Trooper Evans acted willfully and wantonly, thus depriving the district court of subject-matter jurisdiction. As to the State Patrol, Appellants argue that, regardless of our ruling on Trooper Evans's liability, the district court erred because the willful and wanton exception doesn't apply to public entities. We address each argument in turn.

### A. Standard of Review

In the district court, Appellants moved to dismiss Schmitz's state tort claim under Rule 12(b)(1) for lack of subject-matter jurisdiction, arguing that Colorado's Immunity Act barred the claim. The Immunity Act implicates federal courts' subject-matter jurisdiction because "Colorado treats this statutory immunity as sovereign immunity from suit." *See Husk*, 919 F.3d at 1222 (citing *Martinez*, 379 P.3d at 317, 320–22). Though not the same as Eleventh Amendment immunity, the Immunity Act

---

[5] Although the parties occasionally refer to the "unknown supervisor" in their briefs, Schmitz didn't assert his state tort claim against the unknown supervisor. So we needn't consider the supervisor's liability here.

17

nonetheless "involves 'tort liability of the state enforceable in its own courts[,]' . . .which federal courts, under *Erie*, honor when exercising supplemental jurisdiction over a Colorado tort claim asserted against a public employee . . . ." *Id.* at 1222 (quoting *Griess v. Colorado*, 841 F.2d 1042, 1044–45 (10th Cir. 1988) (per curiam)). Put another way, if under the Immunity Act Colorado's courts would conclude that they lacked subject-matter jurisdiction to hear a claim because the state hadn't waived its sovereign immunity, federal courts should conclude the same. *See Glasser v. King*, 721 F. App'x 766, 770 (10th Cir. 2018) (unpublished) ("[A] public employee's immunity under the [Immunity Act] is a matter of subject-matter jurisdiction." (citation omitted)).

A Rule 12(b)(1) motion to dismiss "may take one of two forms"—a facial attack or a factual attack. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012). While a facial attack considers only the factual allegations in the complaint, a factual attack "goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction." *Id.* (quoting *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010)). Though Appellants fail to specify which form of 12(b)(1) relief they're pursuing, their briefing suggests they're mounting a facial attack. *See* Reply Br. at 27 ("[Appellants] maintain that Mr. Schmitz *has not*

18

*alleged sufficient facts* to show jurisdiction, and/or *there is no evidentiary dispute* of the facts relevant to governmental immunity." (emphasis added)).

We review de novo a district court's disposition of a Rule 12(b)(1) motion to dismiss. *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). And when reviewing a facial attack, "[we] must accept the allegations in the complaint as true."[6] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 877–78 (10th Cir. 2017) (internal quotation marks and citation omitted). Our review here thus mirrors how we assess Rule 12(b)(6) motions. *See Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017) (agreeing with the Fourth Circuit that when assessing Rule 12(b)(1) facial attacks courts "must apply a standard patterned on Rule 12(b)(6)" (internal quotation marks and citation omitted)); s*ee also Feltman v. Europe*, No. 18-CV-3113-WJM-STV, 2019 WL 6215445, at *8 (D. Colo. Nov. 21, 2019) ("[B]ecause Defendants use a Rule 12(b)(1) motion to make a facial attack on the sufficiency of Plaintiff's allegations, there would be no practical difference between dismissal for failure to state a claim and dismissal for lack of subject-matter jurisdiction."). That is, we evaluate whether the complaint "contain[s] sufficient factual matter . . .to 'state a claim to relief that is plausible on its face.'"

---

[6] Appellants contend that "[t]he allegations asserted in the complaint are not taken as true on a motion to dismiss for lack of subject-matter jurisdiction." Appellants' Opening Br. at 17. That statement probably has less than a .500 batting average. It's only when reviewing a *factual* attack that we "may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Because Appellants mount a facial attack, we accept the Complaint's allegations as true. *Id.* at 1002.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim "has facial plausibility" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**B.     The District Court's Disposition Didn't Rely on Allegations Outside the Complaint**

Appellants argue that to reach its decision the district court "relied on new allegations stated in the Response [to the Motion to Dismiss] based on [Schmitz's] subjective interpretation of the dash camera footage, as well as other information, none of which was alleged in the Complaint." Appellants' Opening Br. at 18–19. Appellants fail to specify which "new allegations" the district court improperly relied on. But they're surely referring to two crucial details not included in the Complaint that the dashcam footage discloses: (1) Schmitz telling Trooper Evans that he was on "a lot of medication[s] but had not taken them that day," and (2) Trooper Evans querying whether the officers present should have "medical" respond. App. at 48. Appellants maintain that the district court's relying on extra-Complaint allegations violated established precedent requiring that, on a motion to dismiss, a court may look only to the allegations in the complaint to determine whether the plaintiff has adequately stated a claim for relief. *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) ("[I]n determining whether to grant a motion to dismiss for failure to state a claim, we look to the specific allegations in the complaint to determine whether

20

they plausibly support a legal claim for relief." (internal quotation marks and citation omitted)); *Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003) (noting that a plaintiff "may not rely on the allegations in his reply brief to supplement his complaint").

We conclude that the district court committed no error. Schmitz doesn't deny that his opposition to Appellants' motion to dismiss contained additional details not included in the Complaint. Instead, Schmitz points out that the district court's disposition of the tort claim relied exclusively on allegations found in the Complaint. Indeed, in their Reply, Appellants acknowledge that "the district court did not cite to any of the new allegations . . . [contained] in the Response." Reply Br. at 19. But Appellants argue that, because the district court "did not address [Appellants'] argument urging the district court to disregard these new allegations," "it is impossible to know whether these additional allegations . . .influence[d] the district court's decision." *Id.* In effect, Appellants invite us to assume that the district court subconsciously incorporated into its analysis Schmitz's additional allegations despite not discussing them in its order.

We reject Appellants' proposed approach to assessing whether the district court improperly relied on allegations outside the Complaint. As an initial matter, Appellants cite no caselaw for the proposition that we may infer that the district court relied on new allegations in reaching its decision simply because the nonmovant presented in its opposition additional facts supporting its allegations. And that's likely because Appellants' approach is unworkable. It would require us to parse every

21

challenged order for any subtle indications that the nonmovant's later-included allegations influenced the district court. Rather, when considering challenges like the one Appellants press here, we conduct an objective review, scrutinizing only the order's language to assess what allegations the district court relied upon to reach its conclusion. Because the parties agree that the district court's Order exclusively relied on allegations contained in the Complaint, we find no error.

### C. Schmitz's Complaint Contains Sufficient Allegations That Trooper Evans Acted Willfully and Wantonly

Appellants contend that the allegations in Schmitz's Complaint support only a claim for negligence and that the district court erred by concluding that the allegations sufficiently alleged willful and wanton conduct. Although a close call, we agree with the district court that Schmitz has sufficiently alleged that Trooper Evans acted willfully and wantonly.

The Immunity Act fails to define "willful and wanton." But the Colorado Supreme Court has recently clarified that the term means something more than negligence. *Martinez*, 379 P.3d at 323. To be willful and wanton, the public employee's conduct must have "exhibited a conscious disregard of the danger." *Id.* For instance, in *Martinez*, a police officer attempted to subdue the plaintiff without first holstering his weapon. *Id.* at 318. In the process, the officer accidentally fired his gun, striking the plaintiff in the hip. *Id.* The plaintiff filed a state law battery claim against the officer, and the officer moved to dismiss under the Immunity Act. *Id.* The trial court denied the motion, concluding that the Complaint "adequately pled

22

willful and wanton conduct" because the officer "should have realized this conduct was dangerous." *Id.* at 319. Having clarified that a negligent, should-have-known standard doesn't constitute "willful and wanton conduct," the Colorado Supreme Court reversed and remanded for the trial court to assess whether the officer's conduct "exhibited a conscious disregard of the danger." *Id.* at 323.

Applied here, we must decide whether Trooper Evans exhibited a conscious disregard of the danger Schmitz faced absent immediate medical attention.[7] It's not enough to conclude that Trooper Evans should have realized the danger. And we

---

[7] Appellants suggest that Trooper Evans's conduct couldn't have been willful and wanton because "a non-medical professional such as Trooper Evans could not have possibly discerned the night of the arrest" that Schmitz "was suffering from an obscure medical condition." Appellants' Opening Br. at 25. But Colorado's Court of Appeals recently reversed a trial court for defining too narrowly the "danger" that a public employee must consciously disregard. *See Duke*, 456 P.3d at 44 (noting that an exacting level of specificity "places an exceedingly high burden on plaintiffs, when instead the burden should be a lenient one because we must narrowly construe statutes that grant governmental immunity" (citation omitted)). The Court of Appeals explained:

> We are aware of no support for the proposition that a public employee's knowledge of the specific cause of potential injury or death is required for the employee's omissions to constitute willful and wanton conduct. To the contrary, knowledge and conscious disregard *of a health danger* to another is sufficient.

*Id.* (emphasis added) (collecting cases). Thus, we assess only whether Trooper Evans consciously disregarded a health danger to Schmitz.

must make that determination based solely on allegations contained in the Complaint.

The Complaint alleges:

- Trooper Evans "found Plaintiff in a very 'confused' state." App. at 14.

- "[Trooper Evans] observed that Plaintiff did not know where he was going or where he came from and Plaintiff kept repeating, 'Just up the road.'" *Id.*

- After he asked Schmitz to step out of the vehicle, Trooper Evans "had to repeat specific instructions to unbuckle his seat belt several times before he exited unsteadily, using the vehicle for support." *Id.* at 14–15.

- When exiting, the car door closed on Schmitz's arm. *Id.* at 15.

- "[Schmitz] stated that he was 'waiting for his head to get out' because it hurt." *Id.*

- Trooper Evans reported observing "indicia of impairment, including slow hand movements, confusion, inappropriate answers to simple questions and using the vehicle to exit." *Id.*

- Trooper Evans never offered Schmitz "any medical treatment or assistance whatsoever." *Id.*

- Trooper Evans didn't smell alcohol on Schmitz. *Id.* ("Defendant Evans indicated on the Colorado State Patrol Impairment Examination Form that the only odor noted was herbal tea.").[8]

From these facts, Schmitz further alleged the following, which the district

court relied upon to conclude the Complaint sufficiently alleged willful and wanton

conduct:

> Defendants *knew* . . . that there was a strong likelihood that Plaintiff was in danger of serious injury and harm, as made known by Plaintiff's obvious impairment, symptoms, injuries and manifestations of physical pain.

> Defendants disregarded the *known*, obvious, and substantial risks to Plaintiff's health and safety by failing to provide Plaintiff with any

24

physical assessment or evaluation, and failing to provide timely or adequate treatment, despite his obvious and emergent needs.

*Id.* at 19 (emphasis added).

Taken together, these allegations sufficiently allege that Trooper Evans consciously disregarded the danger to Schmitz's health from Schmitz's not receiving prompt, professional medical attention. Significantly, unlike the plaintiff in *Martinez*, who apparently alleged only that the officer *should have known* of the risk of danger, Schmitz alleges that Trooper Evans *knew* of the potential danger to Schmitz's health. Indeed, Trooper Evans knew that something was wrong with Schmitz: he could hardly get out of the car, he shut the door on his arm, and he struggled to answer simple questions. Further, Schmitz told Trooper Evans that his head hurt, and Schmitz's disorientation was evident—he didn't know where he was coming from or where he was going, and he said that he was "waiting for his head to get out." *Id.* at 15. Accepted as true, these facts support the inference that Trooper Evans realized that Schmitz needed medical attention. But Trooper Evans disregarded the danger by

---

[8] Appellants urge us also to consider Schmitz's representation in his opposition to Appellants' Motion to Dismiss that Trooper Evans conducted a "'thorough' investigation" and spent over an hour with Schmitz before arresting him. Appellants' Opening Br. at 30 (quoting App. at 44). Of course, as Appellants stress, we may not consider allegations outside the Complaint. Regardless, that Trooper Evans spent an hour with Schmitz supports our conclusion. If Trooper Evans had thought this was a simple case of drunk driving (or driving under the influence of drugs), he likely would have arrested Schmitz with little hesitation and without first checking in with his sergeant.

25

failing to call an ambulance or at the very least alerting the county jail officials that they should check Schmitz for any medical issues.

Appellants disagree, arguing that "[a]t most, Trooper Evans'[s] conclusion that Mr. Schmitz exhibited signs of intoxication instead of serious illness[] was a mistake which is consistent with negligence." Appellants' Opening Br. at 30. They stress that Trooper Evans didn't know definitively at the time of arrest that Schmitz wasn't drunk. *Id.* at 27 ("[T]he mere fact that Trooper Evans did not detect the odor of alcohol does not rule out alcohol intoxication altogether."). And even if Trooper Evans had ruled out inebriation, Appellants argue that he couldn't have known at the time that Schmitz wasn't intoxicated by some other illicit substance. In brief, while acknowledging Trooper Evans may have made a mistake, Appellants maintain that that mistake doesn't rise to the level of willful and wanton conduct.

But Appellants' theory depends on a faulty assumption. They assume that, if Trooper Evans reasonably believed that Schmitz was intoxicated (either with alcohol or some other substance), then his failure to seek medical care for Schmitz couldn't have amounted to willful and wanton conduct. We reject that premise. Suppose that Schmitz had been unconscious when Trooper Evans arrived, and that several empty prescription bottles lay scattered throughout the car. In that scenario, Trooper Evans could reasonably believe that a drug overdose had caused Schmitz's condition. But that deduction wouldn't excuse Trooper Evans if he failed to seek immediate medical care to help Schmitz. In other words, Trooper Evans may have consciously disregarded the danger to Schmitz's health regardless of whether he believed

26

intoxication caused Schmitz's symptoms. That Trooper Evans may have believed that Schmitz was intoxicated doesn't end our inquiry into whether he acted willfully and wantonly.

Obviously, we're not ruling that law-enforcement officers must call for an ambulance every time they encounter an impaired driver. But based on the facts alleged in the Complaint, this was far from a run-of-the-mill DUI. Most telling, Trooper Evans decided to arrest Schmitz only after conferring with his sergeant. One reasonable inference that could be drawn from his hesitation is that Trooper Evans felt uncomfortable arresting Schmitz for DUI because he recognized that something other than drugs or alcohol was causing his symptoms. Though discovery may show that isn't so, for now Schmitz has pleaded sufficient facts to plausibly allege that Trooper Evans consciously disregarded a danger to Schmitz's health.

Appellants' other attacks on the district court's Order are likewise unavailing. Appellants take particular issue with the district court's statement that "Trooper Evans knew that Mr. Schmitz manifested symptoms of impairment but knew that he had consumed no alcohol and that the symptoms must have some other cause." App. at 79. Appellants insist that "[n]owhere in the Complaint . . . did Mr. Schmitz affirmatively state that Trooper Evans the *night of the arrest and detention*, knew of the lack of evidence of Mr. Schmitz's intoxication." Appellants' Opening Br. at 26. That's true. It appears the district court drew an inference that Trooper Evans "knew" Schmitz "had consumed no alcohol" based on Trooper Evans's observation that he didn't smell alcohol, coupled with his hesitation to arrest Schmitz. But the district

27

court limited this attribution of knowledge to alcohol; the court didn't state that Trooper Evans knew that Schmitz wasn't intoxicated at all. So when the district court concluded that Trooper Evans knew that the symptoms "must have some other cause," that didn't rule out illicit drugs. Rather, the district court apparently meant that, once Trooper Evans ruled out drunk driving, he knew that something more serious was causing Schmitz's symptoms. But Trooper Evans still failed to seek medical help.

Finally, Appellants argue that the district court's refusal to grant their Motion to Dismiss on the state tort claim contradicts its ruling granting Trooper Evans qualified immunity on Schmitz's constitutional claims. Appellants' argument is unpersuasive. Determining whether Trooper Evans is entitled to qualified immunity constitutes a wholly different inquiry than deciding whether the Complaint sufficiently alleges willful and wanton conduct. Appellants' theory might carry more weight had the district court determined that Trooper Evans hadn't violated Schmitz's constitutional rights. It didn't. The district court confined its analysis to the second prong of the qualified immunity analysis—whether Trooper Evans violated clearly established law. Concluding that he hadn't, the court declined to consider whether Trooper Evans's conduct violated Schmitz's Fourth, Eighth, or Fourteenth Amendment rights.

Appellants nevertheless attempt to cast the district court's order as contradictory. They note that, in dismissing Schmitz's Eighth Amendment deliberate-indifference claim, the district court described Trooper Evans's conduct as

28

"confusion in the absence of intoxication." Reply Br. at 25 (quoting App. at 77 n.1). They then misunderstand the district court's ruling, claiming that the court "concluded that this 'confusion' could not form the legal basis of an Eighth Amendment claim for cruel and unusual punishment." *Id.* But the district court declined to reach that issue:

> Again, my holding is limited to the clearly established element, and I do not address whether Trooper Evan[s]'s conduct amounted to deliberate indifference. Indeed, as addressed under the CGIA claim, Mr. Schmitz successfully alleges Trooper Evan[s]'s conscious disregard, *suggesting Trooper Evans might have been deliberately indifferent.* However[,] because the clearly established element was clear, I do not address the constitutional violation.

App. at 77 n.1 (emphasis added). Contrary to Appellants' reading of the Order, the district court suggested that Trooper Evans's conduct may have violated Schmitz's constitutional rights. So the district court's later conclusion that Schmitz sufficiently alleged that Trooper Evans had acted willfully and wantonly doesn't contradict its ruling affording Trooper Evans qualified immunity.

At bottom, we conclude Schmitz alleged just enough to survive Appellants' Motion to Dismiss. Trooper Evans confronted a largely incoherent, disoriented Schmitz, who told Trooper Evans that he was in pain. We can infer from the Complaint that Trooper Evans ruled out alcohol as the cause of Schmitz's symptoms. And Schmitz's symptoms indicated that he needed medical attention, regardless of the cause. Based on these facts, which we accept as true, Schmitz has sufficiently

29

alleged that—by failing to have someone at least examine him—Trooper Evans consciously disregarded the danger to Schmitz's health.

### D. The District Court Erred in Allowing Schmitz's State Tort Claim to Advance Against the State Patrol

After concluding that Schmitz had adequately stated a claim against Trooper Evans for willful and wanton conduct, the district court also ruled that Schmitz's claim could proceed against the State Patrol "as Trooper Evans'[s] supervisor for vicarious liability." App. at 79. Appellants argue that the district court's ruling directly contravenes Colorado law governing this issue. We agree.

In *Gray*, the Colorado Court of Appeals considered this issue and concluded that "the [Immunity Act] does not provide for the waiver of the sovereign immunity of public entities from suit based either on their own willful and wanton acts or omissions, *or their employees' willful and wanton acts or omissions*." 284 P.3d at 196 (emphasis added) (citing *Middleton v. Hartman*, 45 P.3d 721, 728 (Colo. 2002), *as modified on denial of reh'g* (May 13, 2002)). The parties agree that the State Patrol qualifies as a public entity under the Immunity Act. So the State Patrol enjoys immunity from suit regardless of whether Trooper Evans's actions amounted to willful and wanton conduct.

The district court didn't discuss *Gray*, relying instead on *Peterson v. Arapahoe County Sheriff*, 72 P.3d 440 (Colo. App. 2003). But that case is inapposite. There, the Colorado Court of Appeals considered whether a county sheriff, a public employee, could be held liable for the torts of its deputies—not whether *a public entity* could be

30

vicariously liable for the torts of individual employees. *See Peterson*, 72 P.3d at 444.

*Peterson* thus doesn't conflict with *Gray*'s holding that the Immunity Act shields public entities from suit even when that entity's employees have engaged in willful and wanton conduct. Indeed, Schmitz's counsel conceded at oral argument that we should dismiss the State Patrol from the case.

In short, the Immunity Act's exception for willful and wanton conduct doesn't apply to public entities. The district court thus erred by allowing Schmitz's claim against the State Patrol to proceed. We therefore reverse and dismiss with prejudice Schmitz's tort claim as to the State Patrol.[9]

## IV.   We Deny Schmitz's Request for Sanctions

Even if we excused the evident procedural deficiencies, Schmitz's request for sanctions is meritless.[10] He argues we should sanction Appellants because their arguments "are frivolous as they are either without merit or beyond the scope of

---

[9] The Eleventh Amendment provides an independent basis to dismiss the tort claim against the State Patrol. The State Patrol is an arm of the State of Colorado for purposes of the Eleventh Amendment. *See Benton v. Town of South Fork*, 587 F. App'x 447, 450 (10th Cir. 2014) (unpublished). The Eleventh Amendment bars Schmitz's claim for damages against the State Patrol in federal court, even when the claim for relief is, as here, based in state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984) (clarifying that pendent jurisdiction over state-law claims doesn't abrogate Eleventh Amendment immunity).

[10] Schmitz failed to file a separate motion for sanctions, instead merely incorporating his request within his Response Brief. This alone provides grounds to deny his request. *See Abeyta v. City of Albuquerque*, 664 F.3d 792, 797 (10th Cir. 2011) ("We must deny this request [for sanctions] because [Appellee] failed to file a separate motion or notice requesting sanctions." (citing Fed. R. App. P. 38 advisory committee's note)).

appellate review." Appellee's Resp. Br. at 9. As discussed above, Appellants' arguments lie comfortably within the scope of our review. And they aren't frivolous. *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1071 (10th Cir. 2007) ("An appeal is considered frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." (quoting *F.D.I.C. v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996))). Reasonable jurists could disagree about whether Schmitz sufficiently alleged willful and wanton conduct—it's not the kind of baseless appeal asserted merely to harass an opponent that would justify sanctions. We thus reject Schmitz's request.

## CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand for further consideration consistent with this opinion.

Entered for the Court

Gregory A. Phillips
Circuit Judge